UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| NATHAN BARR,<br><br>             Plaintiff,<br><br>      v.<br><br>AUTOZONERS, LLC; AUTOZONE, INC.; DWAYNE JOHNSON, and DOES 1 to 100, inclusive,<br><br>             Defendants. | No. 2:23-cv-02319 WBS AC<br><br>MEMORANDUM AND ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

----oo0oo----

Plaintiff Nathan Barr brought this employment discrimination action under California's Fair Employment & Housing Act, Cal. Gov. Code § 12940, et seq. ("FEHA"), against defendants Autozoners, LLC and AutoZone, Inc. (together, "Autozone"); Dwayne Johnson; and Does 1 to 100, inclusive. (Docket No. 1-1.)  Defendants now move for summary judgment, or, in the alternative, partial summary judgment.  (Docket No. 24.)

1

Plaintiff Nathan Barr began working as a customer service representative at Autozone in March 2022. (Docket No. 1-1 ("Compl.") at 6.) Relevant to his claims here, plaintiff is a gay, African American man. (Id. at 7.)

In or around April 2022, Barr and his supervisor, Dwayne Uhl[1], were engaged in a conversation regarding food. (Id.) During this conversation, Uhl, a "Caucasian male," allegedly told Barr that he "kn[ew] [Barr's] kind likes watermelon." (Id.) Barr was "deeply offended" by Uhl's comment. (Id.)

Shortly thereafter, Barr reported Uhl's comment to a manager, Tyra Mariscal, who responded by stating "oh that's just how [Uhl] jokes." (Id.; Docket No. 24-1 at 6.) Uhl continued to make inappropriate remarks: Upon overhearing a conversation Barr was having with another coworker regarding his boyfriend, Uhl allegedly "looked at Barr with disgust" and said "ew, you're gay, you're not supposed to be gay." (Compl. at 7.) Barr reported this incident to Mariscal, too. (Id. at 8.)

On another occasion, Barr was discussing with his coworkers how he was unable to eat due to a toothache. (Id.) Uhl interjected by saying "well I know you can eat some fried chicken or watermelon." (Id.) In distress, Barr reported this comment to Mariscal, who informed him that he could take the rest

---

[1]   In his complaint, plaintiff refers to his supervisor as "Dwayne Johnson." (See Compl.) Defendants refer to "Dwayne Johnson" as "Dwayne Uhl" in their motion for summary judgment (see Docket No. 24-1), and plaintiff in turn refers to "Dwayne Johnson" as "Dwayne Uhl" in his opposition (see Docket No. 26.) The court refers to plaintiff's supervisor as "Dwayne Uhl."

of the day off and agreed to pay him for the remainder of his shift.  (Id.)

Lastly, Barr alleges that, while he was standing at a cash register, Uhl told him that he "look[s] like [he] would have a cousin named Shaniqua."  (Id.)

After receiving "no response from his supervisors" regarding his complaints of Uhl's comments, on July 6, 2022, Barr wrote a letter detailing the "harassment he had been subjected to" to district manager Devin Galyean.  (Id.)  Barr also discussed Uhl's comments with Galyean directly; during this conversation, Barr stated that he would be willing to transfer to Autozone locations in South Sacramento.  (Docket No. 26 at 13.) Galyean, in turn, emailed human resources manager Isaac Chavez about Uhl's behavior.  (Id.)

Barr alleges that, after complaining of Uhl's misconduct to Galyean, he was involuntarily transferred to an Autozone store in Folsom, California, with a longer commute to-and-from his residence.  (Compl. at 8; Docket No. 26 at 15.)  He requested Galyean to reassign him to a more convenient Autozone location, but after "waiting for weeks" for such a transfer, he was "forced to resign from his position at Autozone."  (Compl. at 8.)  The instant action followed.

I.   Legal Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.

3

R. Civ. P. 56(c).  A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact, which they can satisfy by presenting evidence that negates an essential element of the non-moving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

"Once the moving party meets its initial burden, the non-moving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Burch v. Regents of Univ. of California, 433 F. Supp. 2d 1110, 1125 (E.D. Cal. 2006) (Shubb, J.) (quoting Celotex Corp., 477 U.S. at 324).

II.  Plaintiff's FEHA Claims

Plaintiff brings four claims against defendants under FEHA:  (1) discrimination on the bases of race/color and sexual orientation; (2) hostile work environment on the bases of race/color and sexual orientation; (3) retaliation for engaging in protected activity; and (4) failure to prevent discrimination, retaliation, and harassment.  (Docket No. 1-1.)  Defendants move for summary judgment on each claim.  (Docket No. 24.)

a.  Discrimination Claim

To establish a prima facie case for discrimination

4

under FEHA, Barr "must provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317, 355, 8 P.3d 1089, 1113 (2000).

The parties dispute whether Barr suffered an adverse employment action.  (Compare Docket No. 24-1 at 10-16 with Docket No. 26 at 25-27.)  An adverse employment action is one that "materially affects the terms, conditions, or privileges of employment."  Jones v. Lodge at Torrey Pines P'ship, 42 Cal. 4th 1158, 1168, 177 P.3d 232 (2008) (citation modified).  "An adverse employment action is not limited to 'ultimate' employment acts, such as hiring, firing, demotion or failure to promote, but also includes the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for career enhancement."  Washington v. California City Correction Ctr., 871 F. Supp. 2d 1010, 1028 (E.D. Cal. 2012) (Ishii, J.) (citation modified).  That said, "the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action."  Thomas v. Dep't of Corr., 77 Cal. App. 4th 507, 511, 91 Cal. Rptr. 2d 770 (2000).

Barr argues that Autozone's alleged failure to transfer him to a different store location and constructive discharge from

5

his position constitute adverse employment actions.  (See Docket No. 26 at 25-27.)  He also alleges that the reduction in work hours he experienced after he complained of Uhl's behavior constitutes an adverse employment action.  (See Compl. at 8.) None of Barr's theories avails.

### i.    Transfer

Barr states in his opposition to Autozone's motion for summary judgment that "issues of fact" exist as to whether he was "offered a transfer" and "contacted about a transfer."  (Docket No. 26 at 26.)  But Barr admits at least twice that he was transferred to a different Autozone location, which he worked at for one day.  (Compl. at 8; Docket No. 26-2 at 17.)

It is difficult to conceive of how this transfer to another location – which Barr himself requested – constitutes an adverse employment action.  While Barr complains that the Autozone store to which he was transferred to was "very inconvenient" (Docket No. 26 at 15), this store was a mere 2.3 miles farther from Barr's residence than his preferred store (Docket No. 26-2 at 17-18), and Barr does not argue that his responsibilities were in any way diminished upon his transfer. See, e.g., McRae v. Dep't of Corr. & Rehab., 142 Cal. App. 4th 377, 393, 48 Cal. Rptr. 3d 313, 325 (2006) ("A transfer is not an adverse employment action when it is into a comparable position that does not result in substantial and tangible harm."); Nidds v. Schindler Elevator Corp., 113 F.3d 912, 919 (9th Cir. 1996) (declining to find adverse employment action where employee was transferred to service route including "allegedly high-crime"

area); cf. E.E.O.C. v. Sw. Furniture of Wisconsin, LLC, 703 F. Supp. 2d 971, 975 (D. Ariz. 2010) (in Title VII context, "an increase in commute resulting from a transfer does not, in and of itself, constitute an adverse employment action.")[2].

Accordingly, Barr has failed to establish that his transfer constituted an adverse employment action.

### ii.   Constructive Discharge

Barr next argues that his constructive discharge from Autozone constituted an adverse employment action.  To "establish a constructive discharge, an employee must plead and prove, by . . . [a] preponderance of the evidence . . ., that the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign." Turner v. Anheuser-Busch, Inc., 7 Cal. 4th 1238, 1251, 876 P.2d 1022, 1029 (1994).  "[T]he standard by which a constructive discharge is determined is an objective one— the question is whether a reasonable person faced with the allegedly intolerable employer actions or conditions of employment would have no reasonable alternative except to quit." Id. at 1248 (citation modified).

"An employee may not simply 'quit and sue,' claiming to

---

[2]   "Claims of discrimination under FEHA and Title VII may be assessed under the same standards, because Title VII and FEHA operate under the same guiding principles." Eaglesmith v. Ray, No. 2:11-cv-00098 JAM, 2011 WL 4738338, at *2 (E.D. Cal. Oct. 6, 2011) (citing Kohler v. Inter-Tel Technologies, 244 F.3d 1167, 1172-73 (9th Cir. 2001)).  Case law interpreting Title VII is thus relevant here.

7

have been constructively discharged"; instead, "[t]he facts must support a finding that the resignation was 'coerced,' rather than 'simply one rational option for the employee.'" Vasquez v. Franklin Mgmt. Real Est. Fund, Inc., 222 Cal. App. 4th 819, 827, 166 Cal. Rptr. 3d 242, 247 (2013) (quoting Turner, 7 Cal. 4th at 1246). Further, to establish constructive discharge, "[a] plaintiff must allege that the discriminatory conduct was severe and pervasive, not just offhand comments or isolated incidents." Hwang v. Nat'l Tech. & Eng'g Sols. of Sandia, LLC, No. 20-cv-08551 SK, 2022 WL 3566444, at *8 (N.D. Cal. Aug. 18, 2022), aff'd, No. 22-16396, 2024 WL 208139 (9th Cir. Jan. 19, 2024).

Barr alleges that, on four occasions, Uhl made racist or homophobic comments towards him at work. (See generally Compl.). While Uhl's comments are reprehensible, these "separate, isolated incidents are insufficient to create such intolerable working conditions needed to sustain a constructive discharge claim," Rizvanovic v. Amazon.com Servs., LLC, No. 1:21-CV-01804 JLT CDB, 2024 WL 1886495, at *7 (E.D. Cal. Apr. 30, 2024), especially when viewed in conjunction with Barr's subsequent transfer to a location free from Uhl (see Compl. at 8).

Moreover, the facts do not support that Barr's resignation was "coerced," instead of "simply one rational option." See Vasquez, 222 Cal. App. 4th at 827. On July 12, 2022 -- six days after he complained of Uhl's comments to Galyean -- Barr was hired by Goodwill for a full-time position at a higher hourly salary than he received at Autozone. (Docket No.

8

26-2 at 6, 19-20.)  Barr ceased showing up for shifts at any Autozone location the following day.  (Id. at 20.)  Considered together, these facts suggest that Barr's resignation was not "coerced"; rather, Barr selected the "rational option" of resigning from his employment at Autozone for a higher-paying job elsewhere.  See Vasquez, 222 Cal. App. 4th at 837.

Accordingly, Barr has not established that he was constructively discharged from his position at Autozone.

### iii. Reduction in Hours

In his complaint, Barr briefly alleges that after he raised concerns about Uhl's comments, his work hours were reduced.  (Compl. at 8.)  While "[a] reduction in work hours may constitute an adverse employment action," Violan v. On Lok Senior Health Servs., No. 12-cv-05739 WHO, 2013 WL 6907153, at *7 (N.D. Cal. Dec. 31, 2013) (collecting cases), Barr admits that his work hours regularly varied and that he incurred his peak work hours shortly after complaining of Uhl's behavior.  (Docket No. 26-2 at 21-22.)  Thus, any alleged fluctuation in Barr's work hours did not constitute an adverse employment action here.

Because Barr has failed to establish an adverse employment action, his discrimination claim fails.  See Guz, 24 Cal. 4th at 355; see also Brown v. New York Life Ins. Co., 147 F. App'x 640, 642 (9th Cir. 2005) (affirming district court's dismissal of FEHA discrimination claim because plaintiff suffered no adverse employment action).

### b. Hostile Work Environment Harassment Claim

"To establish a prima facie case of harassment," Barr

9

must show that "(1) []he is a member of a protected class; (2) []he was subjected to unwelcome harassment; (3) the harassment was based on h[is] protected status; (4) the harassment unreasonably interfered with h[is] work performance by creating an intimidating, hostile, or offensive work environment; and (5) defendants are liable for the harassment." Galvan v. Dameron Hosp. Assn., 37 Cal. App. 5th 549, 563, 250 Cal. Rptr. 3d 16, 28 (2019).  The parties dispute only whether Barr has shown that the conduct he experienced amounted to a hostile work environment. (Docket Nos. 24-1 at 16-20; 26 at 16-20.)

Under FEHA, "an employee claiming harassment based upon a hostile work environment must demonstrate that the conduct complained of was severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees because of their" protected status.  Miller v. Dep't of Corr., 36 Cal. 4th 446, 462, 115 P.3d 77, 87 (2005).

The California legislature amended the California Government Code to provide that, as of January 1, 2019, "[a] single instance of harassing conduct is sufficient to create a triable issue regarding the existence of a hostile work environment if the harassing conduct . . . unreasonably interfered with the plaintiff's work performance or created an intimidating, hostile, or offensive working environment," and that "[h]arassment cases are rarely appropriate for disposition on summary judgment."  Cal. Gov. Code. §§ 12923(b), (e).  In light of these recent amendments, "[a] California appellate court

applying section 12923 has held that cases that focused on the 'concerted pattern of harassment of a repeated, routine or a generalized nature' [are] no longer good law in determining what conduct creates a hostile work environment on a summary judgment motion." Wilson v. City of Fresno, 763 F. Supp. 3d 1073, 1102 (E.D. Cal. 2025) (Sherriff, J.) (quoting Beltran v. Hard Rock Licensing, Inc., 95 Cal. App. 5th 865, 135, 315 Cal. Rptr. 842, 855 (2023)).

This is not the "rare[]" instance in which a harassment case is "appropriate for disposition on summary judgment." Cal. Gov. Code § 12923(e). Uhl, a supervisor in Barr's work environment, told Barr that he knew Barr's "kind likes watermelon," (Compl. at 7), expressed disgust at Barr being gay and told Barr that he was "not supposed to be gay," (id.), told Barr that he could "eat some fried chicken or watermelon," (Compl. at 8), and told Barr that he "look[ed] like [he] would have a cousin named Shaniqua," (id.). Courts in this circuit have declined to grant summary judgment in favor of employers on FEHA harassment claims when confronted with similar circumstances. See, e.g., Wilson, 763 F. Supp. 3d at 1102 (declining to grant summary judgment in favor of employer where supervisor made several racially derogatory comments to subordinate); Batiste v. City of Richmond, No. 22-cv-01188 AMO, 2023 WL 8191088, at *5 (N.D. Cal. Nov. 27, 2023), motion for relief from judgment denied, No. 22-cv-01188 AMO, 2024 WL 1485843 (N.D. Cal. Apr. 4, 2024) (declining to grant summary judgment in favor of employer where coworkers, including supervisor, called

11

plaintiff racially derogatory nickname multiple times); Few v. Lenovo (United States), Inc., No. 4:20-cv-03115 KAW, 2021 WL 5973053, at *9-10 (N.D. Cal. Dec. 14, 2021) (declining to grant summary judgment in favor of employer where employee made three racially derogatory comments to African American plaintiff, including asking him whether he liked "sweet tea with [his] fried chicken").

Accordingly, the court will deny Autozone's motion for summary judgment as to Barr's FEHA harassment claim.

c.    Retaliation Claim

FEHA's retaliation provision provides that it is unlawful "[f]or any employer . . . or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."  Cal. Gov. Code § 12940(h).  "To establish a prima facie case of retaliation, a plaintiff must show that []he engaged in a protected activity, that []he was thereafter subjected to adverse employment action by h[is] employer, and there was a causal link between the two."  Addy v. Bliss & Glennon, 44 Cal. App. 4th 205, 217, 51 Cal. Rptr. 2d 642, 649 (1996) (citation modified).

As discussed with regard to his discrimination claim, Barr has failed to establish that he was subjected to an adverse employment action at any point during his employment with Autozone.  Thus, his retaliation claim fails, too.  See id.; see also Thomas v. Spencer, 294 F. Supp. 3d 990, 1000 (D. Haw. 2018)

12

(finding plaintiff's retaliation claim failed at summary judgment stage due to lack of adverse employment action).

d.   Failure to Prevent Claim

Autozone argues that because Barr's discrimination, harassment, and retaliation claims fail, "he cannot proceed on his derivative claim for failure to prevent FEHA violations." (Docket No. 24-1 at 20.)  A "failure to prevent" claim under FEHA is "essentially derivative" of the underlying claim.  Achal v. Gate Gourmet, Inc., 114 F. Supp. 3d 781, 804 (N.D. Cal. 2015) (citation modified).  Correspondingly, because Barr's harassment claim survives, so, too, does his failure to prevent harassment claim.  See id.; see also Wilson, 763 F. Supp. 3d at 1109 (finding that because plaintiff's FEHA retaliation and harassment claims survived summary judgment, plaintiff's failure to prevent retaliation and harassment claim also survived summary judgment).

e.   Punitive Damages

To obtain punitive damages on his surviving claims, Barr must prove by "clear and convincing evidence" that an "officer, director, or managing agent" of Autozone "authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice."  Cal. Civ. Code §§ 3294(a), (b).  Barr argues that Galyean and Chavez were managing agents who ratified Uhl's wrongful conduct.  (See Docket No. 26 at 21-24.)

"Corporate liability for punitive damages depends on the extent to which an employee exercises substantial discretionary authority over decisions that ultimately determine

corporate policy, rather than on an employee's managerial level." Almanza v. Wal-Mart Stores, Inc., No. 06-0553 WBS GGH, 2007 WL 2274927, at *4 (E.D. Cal. Aug. 7, 2007).  Thus, to demonstrate that an employee is a managing agent, a plaintiff seeking punitive damages must "show that the employee exercised substantial discretionary authority over significant aspects of a corporation's business."  White v. Ultramar, Inc., 21 Cal. 4th 563, 577, 981 P.2d 944, 954 (1999).  "[M]ere supervisory status" is insufficient.  Id. at 575.  Rather, a managing agent's decisionmaking must "determine[] corporate polic[ies]," id. at 567, that "affect a substantial portion of the company and that are the type likely to come to the attention of corporate leadership."  Roby v. McKesson Corp., 47 Cal. 4th 686, 715, 219 P.3d 749, 767 (2009), as modified (Feb. 10, 2010) (elaborating on White, 21 Cal. 4th 563).  "The question of whether a corporate employee" constitutes a managing agent "is highly factual." Barrous v. BP P.L.C., No. 10-cv-02944 LHK, 2011 WL 4595205, at *16 (N.D. Cal. Oct. 3, 2011).

At this stage, triable issues of fact remain regarding whether Galyean or Chavez possessed the requisite "discretionary authority" over "formal" corporate policies that "affect a substantial portion of the company."  See Roby, 47 Cal. 4th at 715.  As to Galyean, Barr argues that because the court in White found that a manager who oversaw eight stores and sixty-five employees was a managing agent, Galyean must also be a managing agent because he oversaw more stores and employees and was also tasked with enforcing corporate policy at the stores he

14

supervised (Docket No. 26 at 22).  See White, 21 Cal. 4th at 577. And as to Chavez, Barr argues that he could propose changes to certain written policies and procedures based on a statement he made during his deposition (see Docket Nos. 26 at 23, 26-2 at 23), suggesting his ability to dictate corporate policies, see Roby, 47 Cal. 4th at 715.  Further, the court observes that both employees' titles included the word "manager."  Cf. Barrous, 2011 WL 4595205, at *17 (noting that employee's title as "manager," among other things, "could give rise to the inference that he is a managing agent.").

Absent additional, factual information regarding Galyean's and Chavez's precise duties and their authorities inherent to such duties, the court cannot conclude that no genuine issues of material fact exist as to whether these employees were managing agents of Autozone.  Accordingly, the court will deny defendants' motion for summary judgment as to plaintiff's punitive damages claim.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment (Docket No. 24) be, and the same hereby is, GRANTED as to plaintiff's discrimination and retaliation claims.

IT IS FURTHER ORDERED that defendants' motion for summary judgment (Docket No. 24) be, and the same hereby is, DENIED as to plaintiff's harassment, failure to prevent harassment, and punitive damages claims.

Dated:  February 2, 2026

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

15